IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY BROWN, | ) | |
|     Plaintiff | ) | C.A. 11-140 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| ROBERT MAXA, et al., | ) | |
|     Defendants. | ) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I. INTRODUCTION

### A. Relevant Procedural History

On June 30, 2011, Plaintiff Anthony Brown, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983, against Defendants Robert Maxa, medical director at SCI-Forest ("Maxa"), and Rhonda Sherbine, a physician's assistant at SCI-Forest ("Sherbine"). [ECF No. 1].

In his Complaint, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.[2] As relief for his claims, Plaintiff seeks compensatory and punitive damages.

On January 6, 2012, Defendants filed a motion to dismiss Plaintiff's complaint [ECF No.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 7, 8).

[2] Plaintiff also raised state law medical malpractice claims against Defendants; however, those claims have since been voluntarily dismissed by Plaintiff. (See ECF No. 16 and Text Order dated January 31, 2012).

14], asserting that Plaintiff has failed to state a claim of deliberate indifference upon which relief may be granted and/or that Plaintiff's claims for punitive damages must be dismissed. Plaintiff filed a response to Defendants' motion on January 13, 2012. [ECF No. 17]. This matter is now ripe for consideration.

### B.    Relevant Factual History[3]

On or about July 9, 2009, Plaintiff saw a spider fall out of his sheets as he was making his bed. (ECF NO. 1, Complaint, at ¶ 8). That evening Plaintiff started feeling pain in his right leg, where he noticed "two red dots." (Id. at ¶ 9). On July 16, 2009, Plaintiff's right leg was swollen to the point where he could barely walk. (Id. at ¶ 10). After showing his leg to a corrections officer, Plaintiff obtained a pass to go to the medical department; however, when he arrived at the medical department, Plaintiff was turned away because his situation was not "life or death" and he was already scheduled for a sick call visit the next day. (Id. at ¶¶ 11-12). Plaintiff was then seen at sick call on July 17, 2009, and was given "a limited supply of antibiotics." (Id. at ¶ 13). Even with the antibiotics, Plaintiff's pain increased and he had difficulty putting weight on his leg. (Id. at ¶ 14). A few days later, Plaintiff put in another sick call request and was seen by Defendant Sherbine, who allegedly told him not to put in any more sick call slips. (Id. at ¶ 15).

Over the next four months, Plaintiff's wound became worse and increased in size, and his pain continued to increase to the point where he was "unable to climb into the top bunk and unable to walk without extreme pain." (Id. at ¶ 16). Plaintiff alleges that his wound was not properly cleaned and became infected, and that the nursing staff was "not qualified to provide him with adequate treatment." (Id. at ¶¶ 18-19). Plaintiff alleges further that, despite the

---

[3] The factual history set forth herein is derived from the allegations of Plaintiff's Complaint, which are accepted as true for purposes of deciding Defendants' motion to dismiss, in accordance with Fed.R.Civ.P. 12(b)(6).

worsening of his wound, he was rarely seen by doctors at SCI-Forest. (Id. at ¶ 20). Nonetheless, Plaintiff alleges that Defendant Maxa was aware of Plaintiff's worsening condition because he "signed off on medication orders by the physician assistants and nurses at SCI-Forest," and allegedly reviewed the progress notes associated with the medication orders. (Id. at ¶ 21).

By September 11, 2009, Plaintiff's wound was 2.3 cm long, up to 1.4 cm wide, and 3 mm deep, and did not show any signs of healing. (Id. at ¶ 26). On September 12, 2009, progress notes indicated that Plaintiff's wound "appear[ed] to be deepening" and that Plaintiff reported an increase in pain. (Id. at ¶ 27). On September 14, 2009, Defendant Sherbine evaluated Plaintiff's leg and noted that the wound was 1.8 cm by 1.8 cm and healing. (Id. at ¶ 29). Plaintiff frequently asked Defendant Sherbine for pain medication, but was told that the medical department did not like to give out pain medication because inmates were likely to abuse it; nevertheless, Plaintiff was ultimately provided pain medication. (Id. at ¶ 33).

By September 21, 2009, Plaintiff's wound was so painful Plaintiff had difficulty tolerating any touch to the area. (Id. at ¶ 34). As a result, a nurse practitioner issued a written referral to a general surgeon requesting surgical closure of Plaintiff's wound that was "getting deeper daily." (Id. at ¶ 37). Plaintiff alleges that by the time he saw the general surgeon on October 20, 2009, his wound "was so deep it was down to the bone" and could not be closed. (Id. at ¶ 42). At that time, the surgeon recommended that Plaintiff be seen by another specialist, noting that the wound was "5cm x 5cm, smelled, and was draining purulent fluid." (Id.).

Eight days after Plaintiff's consult with the general surgeon, Defendant Maxa wrote a referral for Plaintiff to be seen by a "wound specialist," which occurred five days later. (Id. at ¶ 44). Plaintiff alleges that he received "medically appropriate treatment" from the wound specialist, who changed Plaintiff's treatment plan and saw Plaintiff on a regular basis. (Id. at ¶¶ 45-46). After repeated visits with the wound specialist, Plaintiff's wound eventually closed, leaving a "sizeable and noticeable scar" on his left leg, where Plaintiff still experiences pain. (Id.

at ¶ ¶ 47-49).

### C. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly,

4

550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

**D.    Discussion**

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[4] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk

---
[4] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

### 1. Defendant Maxa

Plaintiff claims that Defendant Maxa was aware that Plaintiff's wound was worsening, yet, "without conducting in-person examinations of [Plaintiff's] wound, he authorized a course of ineffective medical treatment for several months." (ECF No. 1, Complaint, at ¶ 53). In addition, Plaintiff claims that Defendant Maxa deliberately delayed Plaintiff's access to a medical specialist "who was qualified to provide assessment and treatment of his serious medical condition," ostensibly for non-medical reasons "such as paperwork and expense." (Id. at ¶¶ 55, 57). Defendant Maxa argues that Plaintiff's allegations supporting these claims are not sufficient to establish that he was deliberately indifferent to Plaintiff's serious medical needs. The Court disagrees.

Plaintiff's allegations indicate that during the period from July 16, 2009, to October 20,

2009, the wound in his right leg progressed from two red spots to a deepening, odorous wound measuring 5 by 5 centimeters that was draining purulent fluid and was so painful he could not tolerate touch to the wound area. During that time period, Plaintiff alleges that Defendant Maxa was aware of his worsening condition, yet rarely saw Plaintiff in person and continued to authorize the same treatment consisting primarily of bandage changes. Moreover, Plaintiff alleges that he was not referred to an outside medical professional until September 21, 2009, when a nurse practitioner referred him to a general surgeon who did not see Plaintiff until October 20, 2009. By that time, Plaintiff's wound had worsened to the point where the surgeon was unable to close the wound and recommended that Plaintiff be seen by another specialist. Only then did Defendant Maxa refer Plaintiff to the "wound specialist" who ultimately used effective treatment methods to close the wound.

Accepted as true at this early stage of the proceeding, the foregoing allegations are sufficient to, at least, raise a legitimate question as to whether Defendant Maxa was deliberately indifferent to Plaintiff's serious medical needs. See White v Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)(finding deliberate indifference where the doctor "allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm"). For this reason, the Court is unwilling to dismiss Plaintiff's claims against Defendant Maxa without further development of the record in this case.

### 2. **Defendant Sherbine**

The primary claim against Defendant Sherbine is that she allegedly refused to provide Plaintiff pain medication for some unspecified period of time "because of her belief that prisoners abuse pain medication." (ECF No. 1, Complaint, at ¶ 59). Although it is unclear how long pain medication was allegedly withheld from Plaintiff, it is apparent from Plaintiff's description of the increasing severity of the wound that Plaintiff was in obvious pain. Thus, the alleged denial of pain medication under such circumstances could be found to have caused

Plaintiff undue suffering sufficient to constitute an "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.

In addition, Plaintiff claims that Defendant Sherbine "was aware that [his] wound was worsening for several months," yet she "did not intervene to change the course of treatment." Just as with Defendant Maxa, such allegations are sufficient to, at least, raise a legitimate question as to whether Defendant Sherbine was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendant Sherbine will be denied as well.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTHONY BROWN, | ) | |
| --- | --- | --- |
| Plaintiff | ) | C.A. No. 11-140 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| ROBERT MAXA, et al., | ) | |
| Defendants | ) | |

# **ORDER**

AND NOW, this 5th day of March, 2012,

IT IS HEREBY ORDERED that Defendants' motion to dismiss Plaintiff's complaint pursuant to F.R.C.P. 12(b)(6) [ECF No. 14] is DENIED, and Plaintiff's claims will be allowed to proceed beyond the pleading stage.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge